UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MIQUEAL HARWELL, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 4:22-cv-00366-SRC |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

**Memorandum and Order**

Petitioner Miqueal Harwell seeks to vacate his sentence under 28 U.S.C. § 2255. Citing prosecutorial misconduct and ineffective assistance of counsel, Harwell claims that the United States and his defense counsel misled him into believing that he would receive a 46-month term of imprisonment if he pleaded guilty. However, the Court finds no evidence in the record to support Harwell's assertions, and abundant evidence to the contrary. Harwell also claims that his attorney provided ineffective assistance by failing to file a notice of appeal after Harwell had instructed her to do so. Whether Harwell told his attorney to file a notice of appeal raises a factual issue that the Court must resolve by an evidentiary hearing.

**I.      Statement of facts[1]**

In November 2019, officers in the City of St. Louis observed a 2019 Nissan Rogue with heavily tinted windows. The officers activated their emergency equipment and attempted to conduct a traffic stop. Harwell, the driver of the Nissan, accelerated away at a high rate of speed, violating several traffic control devices. Assisting officers successfully deployed spike strips on the Nissan, deflating the front-passenger-side tire. Harwell continued to drive the

---

[1] This section is materially identical to the "Facts" section in Harwell's Guilty Plea Agreement. *See United States v. Miqueal Harwell,* Case No. 4:19-cr-01038-SRC, Doc. 59 at § 4.

Nissan at a high rate of speed, ignoring traffic-control devices until the car became disabled. Harwell then exited the Nissan and fled on foot. During the foot pursuit, officers observed Harwell discard one Sturm, Ruger & Co. Inc. make, 9mm Luger caliber, semi-automatic pistol by attempting to throw the firearm onto the roof of a nearby business. The firearm fell to the ground. Officers seized the firearm and determined it to be loaded with one live round of ammunition in the chamber and 15 additional live rounds in the magazine. Law enforcement placed Harwell under arrest and took him into custody. A computer inquiry revealed the Nissan Rogue was stolen from the City of Edmundson, Missouri. Following his arrest in a post-*Miranda* interview, Harwell stated that he did not steal the Nissan, but figured it was stolen. Harwell further stated that he carried the gun for protection because he was recently shot.

Harwell admitted that the firearm had been transported across state lines, met the federal definition of a "firearm," and that he knew that he was previously convicted of at least one felony crime punishable by imprisonment for a term exceeding one year. In short, Harwell admitted all the elements of being a felon in possession of a firearm.

**II.     Procedural history**

In December 2019, a federal grand jury returned a one-count indictment against Harwell, charging him with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Docs. 1–2.[2]

**A.     Plea agreement**

In May 2021, Harwell entered into a plea agreement with the United States. Doc. 59 at p. 12; *see also* Plea Tr. at 11:7–13. The plea agreement did not include a joint recommended sentence; instead, the parties agreed that "either party may request a sentence above or below the

---

[2] The "Doc." numbers used in the "Procedural history" section are from *United States v. Miqueal Harwell,* Case No. 4:19-cr-01038-SRC.

2

U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court . . . ." Doc. 59 at § 2(B). The plea agreement explained that the "parties understand that the Court is neither a party to nor bound by the Guidelines recommendations agreed to in [the plea agreement]." *Id.* Section 5 of the plea agreement set forth the statutory penalties for Harwell's offense:

> The Defendant fully understands that the maximum possible penalty provided by law for the crime to which the Defendant is pleading guilty is imprisonment of not more than ten years, a fine of not more than $250,000, or both such imprisonment and fine. The Court also may impose a period of supervised release of not more than three years.
>
> ln certain situations under Title 18, United States Code, Section 924(e)(Armed Career Criminal), Defendant may be subject to a mandatory minimum sentence of imprisonment of fifteen (15) years and a maximum of life, a fine of not more than $250,000, or both such imprisonment and fine, and a term of supervised release of not more than five years. The Defendant is pleading guilty with full knowledge of these possibilities, has discussed these possibilities with counsel and will not be able to withdraw the guilty plea if the Court determines the foregoing statute applies to Defendant=s [sic] sentence.

*Id.* at § 5.

The plea agreement made no promises as to Harwell's base offense level or criminal history level, with the exception of the parties' agreement that: 1) "4 levels should be added . . . because the firearm was used or possessed in connection with another felony offense (i.e. Tampering in the 1st degree);" 2) "2 levels should be added . . . because the Defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer;" and 3) "two levels should be deducted . . . because Defendant has clearly demonstrated acceptance of reasonability." *Id.* at § 6(A)–(B). The plea agreement also noted that Harwell may be eligible to deduct one additional level for timely notifying authorities of his intention to enter a plea of guilty. *Id.* at § 6(B)(ii).

3

Section 10 of the plea agreement confirmed that Harwell was, in fact, guilty and that no other promises or agreements existed between Harwell and the United States:

> This document constitutes the entire agreement between the Defendant and the United States, and no other promises or inducements have been made, directly or indirectly, by any agent of the United States, including any Department of Justice attorney, concerning any plea to be entered in this case.   ln addition, the Defendant states that no person has, directly or indirectly, threatened or coerced the Defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.
>
> The Defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea.   The Defendant further acknowledges that this guilty plea is made of the Defendant's own free will and that the Defendant is, in fact, guilty.

*Id.* at § 10.

### B.    Change-of-plea hearing

On May 17, 2021, the Court held a change-of-plea hearing at which Harwell pleaded guilty to Count 1 of the Indictment.   Doc. 59; Plea Tr. at 19:5–20:3.   During the hearing, Harwell acknowledged that, before he signed the plea agreement, he had an opportunity to review the entire document and ask his counsel any questions.   Plea Tr. at 11:17–12:2.   The Court made sure that Harwell understood how the U.S. Sentencing Guidelines apply to him in his case:

| | |
|---|---|
| **THE COURT:** | . . . did you discuss with your attorney the United States Sentencing Guidelines and how they apply to you in this case? |
| **[HARWELL]:** | Yes, sir. |
| **THE COURT:** | I'm showing you the sentencing table from the sentencing guidelines.   Have you seen this before? |
| **[HARWELL]:** | Yes, sir. |
| **THE COURT:** | And you understand that this table gives me a range of punishment to determine a range of number of months of |

|  |  |
|---|---|
|  | imprisonment to consider in determining your sentence. Right? |
| **[HARWELL]:** | Yes, sir. |
| **THE COURT:** | And that that range is determined by your criminal history category which is across the top and then by the offense level which is down the left-hand side.   As those two get higher, the number of months of imprisonment gets longer.   Do you understand that? |
| **[HARWELL]:** | Yes, sir. |

. . .

|  |  |
|---|---|
| **THE COURT:** | I'm going to turn back to the sentencing guidelines that we talked about earlier, Mr. Harwell.   After I get that range we talked about, then I have to consider a number of other factors to determine your sentence. I will consider the impact of your plea agreement on sentencing issues.   I will hear any evidence and statements that you, your attorney and the AUSA wish to present.   I will consider whether a guideline sentence is appropriate after considering whether a departure is appropriate under the guidelines.   And then I have to consider all of the factors set forth in a federal law known as 18, United States Code, Section 3553(a) to determine whether to impose a sentence that's within the guidelines, above the guidelines or below the guidelines. |
|  | The factors I consider include the nature of the offenses you have committed as well as your personal history and circumstances.   Do you understand all of that? |
| **[HARWELL]:** | Yes, sir. |
| **THE COURT:** | And do you understand that you and the United States have not agreed to a total offense level or an estimated total offense level in this case and that I could find the total offense level as higher than anything you've been told by anyone including your attorney.   And if I do that and if I impose a more severe sentence than anything you've been told or that you are expecting, then you would still be bound by my sentence and you would not have the right to withdraw your plea. |
|  | Do you understand that? |

5

| | |
|---|---|
| **[HARWELL]:** | Yes, sir. |
| **THE COURT:** | Do you have any questions about what I've explained about the sentencing guidelines or how I will determine your sentence? |
| **[HARWELL]:** | No, sir. |

*Id.* at 13:1–21, 24:1–25:7. The Court also made sure that Harwell understood the range of

imprisonment available for his offense:

| | |
|---|---|
| **THE COURT:** | I'm going to go through the ranges of punishment available in this case. There are two different ones: One is if I find you are not an armed career criminal and the other is if I find you are an armed career criminal. If I find you are not an armed career criminal, the range of punishment is up to ten years in prison, up to $250,000 in fine, or I could sentence you to the maximum term of imprisonment or the maximum fine or both. Do you understand that? |
| **[HARWELL]:** | Yes, sir. |
| **THE COURT:** | If I find you are an armed career criminal, then it's a mandatory minimum of 15 years in prison, up to a term of life in prison and then also a fine of up to $250,000. I could also impose the maximum term of imprisonment or the maximum fine or both. Do you understand that? |
| **[HARWELL]:** | Yes, sir |

*Id.* at 21:4–20. Additionally, the Court made sure that, besides the plea agreement, there were

no other understandings, deals, or agreements that could impact Harwell's case:

| | |
|---|---|
| **THE COURT**: | Other than the plea agreement, are there any other understandings, deals or agreements that exist or you believe may exist that in any way affect you in this case? |
| **[HARWELL]:** | No, sir. |
| **THE COURT:** | Other than the plea agreement, has anyone at any time made any other or different promises, representations or assurances to you or has anyone made any threats against you to try to get you to sign the plea agreement or enter a plea of guilty in this case? |

6

| | |
|---|---|
| **[HARWELL]:** | No, sir. |

*Id.* at 12:3–12.   Harwell confirmed that he understood that the Court is not bound by the guilty plea agreement:

| | |
|---|---|
| **THE COURT:** | And do you understand that I am not bound by the plea agreement and it only contains recommendations to me and I am not required to follow those recommendations? |
| **[HARWELL]:** | Yes, sir. |

*Id.* at 19:15–20:8.

After a lengthy plea colloquy, the Court asked Harwell wished to plead to the charges of Court 1 of the Indictment.   Harwell responded: "Guilty, sir."   *Id.* at 26:9.   The Court further inquired:

| | |
|---|---|
| **THE COURT:** | Have you understood all of the questions that I've asked you here today? |
| **[HARWELL]:** | Yes, sir. |
| **THE COURT:** | Have you answered them truthfully and completely? |
| **[HARWELL]:** | Yes, sir. |
| **THE COURT:** | Do you have any questions to ask me at this time? |
| **[HARWELL]:** | No, sir. |
| **THE COURT:** | Are you pleading guilty because you are, in fact, guilty as charged? |
| **[HARWELL]:** | Yes, sir |

*Id.* at 26:10–22.

### C.   Presentence investigation report

Following the change-of-plea hearing, the United States Probation Office prepared a Presentence Investigation Report.   Doc. 65.   The PSR calculated Harwell's base offense level

7

as 20 as Harwell was "found in possession of a firearm after having been a convicted felon and the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or controlled substance offense (Robbery 2nd Degree and Assault 1st Degree-Serious Physical Injury, Docket No.: 10SLCR04750-01)[.]" *Id.* at ¶ 26. The PSR added four levels because Harwell "used or possessed [the] firearm or ammunition in connection with another felony offense, Tampering With a Motor Vehicle 1st Degree and Resisting Arrest, during his arrest for the instant offense," and two levels because Harwell "recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer by speeding through stop signs and traffic signals causing pedestrians and other vehicles to avoid being struck by his vehicle." *Id.* at ¶¶ 27–28. Allowing for a three-level reduction for acceptance of responsibility, the PSR determined that Harwell's total offense level was 23. *Id.* at ¶ 35. The PSR determined that Harwell had 10 criminal history points, resulting in a criminal history category of V, and based upon a total offense level of 23 and a criminal history of V, determined a guideline-imprisonment range of 84–105 months. *Id.* at ¶¶ 48, 84. Neither the United States nor Harwell filed any objections to the PSR.

        D.        **Harwell's sentencing memorandum**

Shortly before sentencing, Harwell filed a sentencing memorandum requesting that the Court vary downward from the advisory guideline range of 84–105 months to impose a sentence of 46 months. Doc. 67.

        E.        **Sentencing**

In November 2021, the Court held a sentencing hearing. Doc. 70. At sentencing, the Court ensured that Harwell that had read and discussed the PSR with defense counsel:

| | |
|---|---|
| THE COURT: | And have you read and discussed the presentence report with Ms. Williams? |
| [HARWELL]: | Yes, sir. |
| THE COURT: | And did you have enough time to do that and to have her answer any and all questions you had about the presentence report and about sentencing? |
| [HARWELL]: | Yes, sir. |
| THE COURT: | And Ms. Williams has told me she has no -- you have no disputes or objections with the presentence report with the one exception of a special condition of supervision. Do you agree with that? |
| [HARWELL]: | Yes, sir. |
| THE COURT: | And is there any agreement you think you have about sentencing other than what is in your guilty plea agreement? |
| [HARWELL]: | No, sir. |

Sent. Tr. at 5:4–19, Doc. 79.

During argument and allocution, defense counsel argued for the 46-month term of imprisonment requested in Harwell's sentencing memorandum:

> WILLIAMS: . . . We are asking the Court vary down from the guideline range to impose a sentence of 46 months. I first wanted to note that I believe the guidelines, while accurately calculated, overstate Mr. Harwell's criminal history due to a retail theft noted in the presentence report. He received one point for that retail theft which put him in a different criminal history category. So but for that retail theft in 2019, receiving one point in a municipal count, Mr. Harwell's guidelines will be 70 to 87 months rather than what they currently are calculated at.
>
> We believe that the 46 months is an appropriate sentence, again, even a downward variance from the appropriate guidelines that we think should apply. It will be and serve as the most time he's ever spent in custody, and it will serve as an incremental punishment for Mr. Harwell.

9

Sent. Tr. at 6:23–7:13.    The United States opposed Harwell's request for a downward variance:

> **WIEMKEN:** . . . The United States is opposing the request for a downward variance and instead asking that this Court sentence this defendant to the middle of his guidelines range. Your Honor, there are several reasons for that request and they are based on the 3553(a) factors.

*Id.* at 10:25–11:5.

After argument and allocution, the Court accepted the parties' plea agreement and adopted the guidelines calculations set forth in the PSR:

> **THE COURT:** Very good. Thank you. With that, I accept the parties' plea agreement which is Docket No. 59 and I adopt the guidelines calculations that are set forth in the PSR which are as follows: Mr. Harwell's total offense level is 23 and his criminal history category is five. That results in a guidelines range of imprisonment of 84 to 105 months. Supervised release range of one to three years. Mr. Harwell is ineligible for probation. A fine range of 20,000 to $200,000. Restitution is not applicable in this case and the special assessment is $100.
>
> I further adopt the PSR as my findings of fact and conclusions of law regarding the advisory guidelines. Counsel, do you have any objections to these findings, conclusions or calculations or any other errors, corrections or objections not previously made?
>
> **WILLIAMS:** No, Your Honor.
>
> **WIEMKEN:** No, Your Honor.

*Id.* at 17:2–19.

At the conclusion of the hearing, the Court sentenced Harwell to a within-guidelines sentence of 90 months of imprisonment[3] followed by a three-year term of supervised release.

---

[3] The Court ordered that Harwell's sentence run consecutively to any sentence imposed in Docket Nos. 1822-CR00650-01 and 18SL-CR0567-01 in Circuit Court, St. Louis City, Missouri and concurrently with Docket No. 1922-CR03522 in Circuit Court, St. Louis City, Missouri. Doc. 71.

Doc. 70. Harwell did not appeal, and he is currently serving his term of imprisonment with a projected release date of July 27, 2026.[4] Harwell is currently in state custody on a writ.

### F. Section 2255 motion[5]

In March 2022, Harwell filed a motion to vacate his sentencing under 28 U.S.C. § 2255. Doc. 1. Harwell supplemented his motion in May 2022. Doc. 5. Harwell raises one prosecutorial-misconduct claim and two ineffective-assistance-of-counsel claims. The United States opposes two of Harwell's claims and requests a limited evidentiary hearing on the third. Doc. 8. Harwell's motion is now ripe and ready for the Court's consideration.

## III. Standard of review

A federal prisoner who seeks relief under 28 U.S.C. § 2255 on grounds "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). To obtain relief under section 2255, the petitioner must establish a constitutional or federal statutory violation constituting "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Gomez*, 326 F.3d 971, 974 (8th Cir. 2003).

Claims brought under section 2255 may be limited by procedural default. A petitioner "cannot raise a nonconstitutional or nonjurisdictional issue in a § 2255 motion if the issue could have been raised on direct appeal but was not." *Anderson v. United States*, 25 F.3d 704, 706 (8th Cir. 1994). However, the Eighth Circuit has noted in dicta in two cases that, if the error

---

[4] *Find an inmate*, Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited February 3, 2023).
[5] The "Doc." numbers in the "Section 2255 motion" subsection come from *Harwell v. United States,* Case No. 4:22-cv-00366.

claimed by a petitioner is jurisdictional, the error may be raised on collateral review without being subjected to procedural-default analysis. *Beaulieu v. Minnesota*, 583 F.3d 570 (8th Cir. 2009); *United States v. Mooring*, 287 F.3d 725, 727 (8th Cir. 2002) ("if the error is jurisdictional, the error may be raised on collateral review without being subjected to procedural default analysis."); *but see Tripp v. United States*, No. 1:11CV00118 ERW, 2012 WL 27930 (E.D. Mo. Jan. 5, 2012) ("constitutional or jurisdictional claims not raised on direct appeal cannot be raised in a § 2255 motion unless the movant can establish '(1) cause for the default and actual prejudice or (2) actual innocence.'") (quoting *United States v. Moss*, 252 F.3d 993, 1001 (8th Cir. 2001)); *Snider v. United States*, No. 4:09CV1171 HEA, 2011 WL 6372345 (E.D. Mo. Dec. 20, 2011) (same).

Ineffective-assistance-of-counsel claims may be raised for the first time in a section 2255 motion even if they could have been raised on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003). This exception exists to prevent petitioners from being forced "to raise the issue before there has been an opportunity fully to develop the factual predicate for the claim." *Id.* Additionally, a petitioner's attorney may serve as counsel for both the trial and appellate case, and it is unlikely that the attorney would raise a claim of his own ineffective assistance on appeal. *See United States v. Rashad*, 331 F.3d 908, 911 (D.C. Cir. 2003).

A movant "faces a heavy burden" to establish ineffective assistance of counsel pursuant to section 2255. *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000). To succeed on an ineffective-assistance-of-counsel claim, a movant must show that counsel's performance was deficient and that the deficient performance prejudiced the movant's case. *Strickland v. Washington,* 466 U.S. 668, 687 (1984); *United States v. Sera,* 267 F.3d 872, 874 (8th Cir. 2001); *DeRoo*, 223 F.3d at 925. An attorney's performance is deficient if it falls "below an objective

standard of reasonableness." *Strickland,* at 687–88; *Sera*, 267 F.3d at 874. Two substantial impediments exist to making such a showing. First, the law applies a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 689); *Sera*, 267 F.3d at 874. Second, "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Rice*, 449 F.3d at 897 (quoting *Strickland*, 466 U.S. at 690). Similarly, counsel is not ineffective for failing to pursue a motion to suppress that he reasonably believes would be futile. *Anderson v. United States*, 762 F.3d 787, 794 (8th Cir. 2014).

If the petitioner's claims are not procedurally barred, the Court must hold an evidentiary hearing to consider the claims "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" 28 U.S.C.A. § 2255(b); *see also Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir. 1994). A petitioner is entitled to an evidentiary hearing "when the facts alleged, if true, would entitle [the petitioner] to relief." *Payne v. United States*, 78 F.3d 343, 347 (8th Cir. 1996) (citation omitted). However, a court may dismiss a claim without a hearing "if the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *Shaw*, 24 F.3d at 1043.

## IV. Discussion

### A. Prosecutorial-misconduct claim related to Harwell's expected sentence.

First, Harwell claims that he had the understanding that if he entered into the plea agreement, he would receive a sentence of 46 months of imprisonment. Doc. 1 at pp. 4–5. Harwell blames his alleged misunderstanding on prosecutorial misconduct, seemingly implying

13

that the United States purposely misled him.  *Id.*   However, the Court finds that the record easily refutes Harwell's claim.

The plea agreement makes no mention of a 46-month term of imprisonment.  To the contrary, it states that "either party may request a sentence above or below the U.S. Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court . . . ."  Plea Agrmt. at § 2(B).  The plea agreement further specified that by statute Harwell faced a sentence up to ten years (unless deemed to be an Armed Career Criminal, in which case he faced a mandatory minimum sentence of at least 15 years).  *Id.* at § 5.  The Court confirmed Harwell's understanding of the plea agreement and explained how sentencing worked at the change-of-plea hearing.  Plea Tr. at 13:22–14:1, 21:4–20, 24:18–25:7.  The Court also inquired on any other agreements or promises that may impact Harwell's case.  *Id.* at 12:3–12.  Again, neither the plea agreement nor the plea-hearing record contains any suggestion of a 46-month term of imprisonment, and Harwell testified that no other agreements existed.  *Id*.

The PSR determined that based on a total offense level of 23 and criminal history of V, Harwell's guideline imprisonment range was 84 months to 105 months.  Doc. 65 at ¶ 84.  The PSR also made no mention of the 46-month term of imprisonment that Harwell claims he expected, and it further reiterated the terms of the plea agreement by stating that "either party may request a sentence above or below the United States Sentencing Guidelines (USSG) range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court."  *Id.* at ¶ 3.

At sentencing, the Court confirmed that that Harwell read the PSR and had no disputes or objections with the PSR, with one exception of a special condition of supervision.  Plea Tr. at

14

5:4–15.  The Court then re-confirmed that Harwell had no other agreement about sentencing other than what is in his plea agreement, which states that either party may request a sentence above or below the U.S. Sentencing Guidelines range that was ultimately determined as 84–105 months of imprisonment.  *Id.* at 5:16–19.

After careful consideration, the Court finds that the record clearly establishes that Harwell fully understood the terms of his plea agreement, the range of punishment he faced, and that he had no agreement for any particular sentence, much less one of 46 months.  The Court found only two references to a 46-month term of imprisonment.  The first reference was in Harwell's sentencing memorandum Harwell, filed shortly before his sentencing hearing.  Doc. 67.  In his memorandum, Harwell "respectfully request[ed] the Court vary downward from the advisory guidelines and impose a sentence of 46 months."  *Id.* at p. 1.  The second was during the sentencing hearing, when Harwell's counsel argued for the downward variance.  Sent. Tr. at 6:23–7:13.  No agreement about sentencing existed, and Harwell's claim of prosecutorial-misconduct fails.

        **B.**    **Ineffective-assistance-of-counsel claim related to Harwell's expected sentence.**

Second, Harwell raises an ineffective-assistance-of-counsel claim related to his alleged misunderstanding.  "A defendant faces a heavy burden to establish ineffective assistance of counsel pursuant to section 2255."  *DeRoo*, 223 F.3d at 925.  To succeed on an ineffective-assistance-of-counsel claim, a movant must show that counsel's performance was deficient and that the deficient performance prejudice the movant's case.  *Strickland*, 466 U.S. at 687; *United States v. Sera*, 267 F.3d 872, 874 (8th Cir. 2001); *DeRoo*, 223 F.3d at 925.  An attorney's performance is deficient if it falls "below an objective standard of reasonableness."  *Strickland,* at 687–88; *Sera*, 267 F.3d at 874.  To establish prejudice, a petitioner must prove that "there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to undermine confidence in the outcome."   *Strickland*, 466 U.S. at 694.   "If the petitioner makes an insufficient showing on one component, the court need not address both components." *Kingsberry v. United States*, 202 F.3d 1030, 1032 (8th Cir. 2000).

As determined above, no evidence in the record exists to support Harwell's claim that he was misled about his expected sentence.   Not only did the plea agreement itself advise Harwell of the associated range of punishment, but the Court also advised Harwell the associated range of punishment at the plea hearing.   Even assuming that defense counsel did not advise Harwell of the associated range of punishment, the plea agreement and the plea hearing colloquy confirm that Harwell knew before he pleaded guilty that he had no agreement about a particular sentence and that he faced a sentence of up to ten years or even possibly a mandatory minimum of fifteen years.   The record accordingly demonstrates that Harwell cannot establish any prejudice and the Court rejects his claim.

### C.   Ineffective-assistance-of-counsel claim related to Harwell's failure to file a timely notice of appeal.

Lastly, Harwell claims that his attorney provided ineffective assistance by failing to file a notice of appeal after Harwell had instructed her to do so.   Doc. 5.   Although ineffective-assistance-of-counsel claims generally require a petitioner to show both deficient performance by counsel and prejudice to the defense caused by that performance, *see Strickland*, 466 U.S. at 687, an attorney's failure to file a notice of appeal after being instructed to do so by his or her client constitutes ineffective assistance entitling petitioner to section 2255 relief, no inquiry into prejudice or likely success on appeal being necessary.   *Barger v. United States*, 204 F.3d 1180, 1181–82 (8th Cir. 2000); *see also Witthar v. United States,* 793 F.3d 920, 922–23 (8th Cir.

16

2015). For a claim to succeed, however, the petitioner must show that he actually instructed his counsel to file an appeal. *See Holloway v. United States,* 960 F.2d 1348, 1356–57 (8th Cir. 1992). A bare assertion by the petitioner that he made a request is not by itself sufficient to support a grant of relief. *See Rodriguez v. United States*, 964 F.2d 840, 842 (8th Cir. 1992) (per curiam). The issue of whether Harwell told his attorney to file a notice of appeal raises a factual issue that must be resolved by an evidentiary hearing. *Whitthar,* 793 F.3d at 923. The Court therefore sets a limited evidentiary hearing on this one claim and will appoint Harwell an attorney for that purpose.

**V.    Conclusion**

The Court will set a limited evidentiary hearing on Harwell's failure-to-file-appeal claim once he returns to federal custody. The Court denies all other claims raised in Harwell's [1] Motion to Vacate, Set Aside, or Correct Sentence.

Dated this 3rd day of February 2023.

                                                                _____
                                                                 STEPHEN R. CLARK
                                                                 CHIEF UNITED STATES DISTRICT JUDGE